UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LEE SMITH #267009,

       Plaintiff,    Hon. Paul L. Maloney

v.    Case No. 1:22-cv-149

JASON BROCK, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 61.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

**I. Background**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF), has sued Muskegon Correctional Facility (MCF) employees Sgt. Jason Brock, Gayle Scanlon, and Karyn Brown based on events that occurred at MCF between April and December 2021. Defendants Scanlon and Brown are mailroom clerks at MCF. (ECF No. 1 at PageID.2.) Plaintiff filed his complaint on February 18, 2022. Following initial screening of Plaintiff's complaint, his remaining claims are that (1) Defendants Brock, Scanlon, and Brown violated his First Amendment rights by, on multiple occasions, opening his legal mail outside of his presence and interfering with and destroying his outgoing legal mail and denying him access to the courts; and (2) Defendant Brock retaliated against Plaintiff by destroying his outgoing legal

1

work based on Plaintiff's filing of lawsuits and grievances against Brock. (ECF No. 15 at PageID.75–80, 83.)

Defendants move for summary judgment, seeking dismissal of most, but not all claims, on the basis that Plaintiff failed properly to exhaust his claims against them before filing this action. In support of their motion, Defendants submit a Step III Grievance Report showing the grievances that Plaintiff pursued through Step III of the MDOC's grievance process while he was incarcerated at MCF between April and December 2021. (ECF No. 62-3.) According to the report, Plaintiff filed two grievances during this period, Grievance No. MCF-21-12-1553-17z (the 1553 Grievance), and Grievance No. MCF 21-10-1322-15B (the 1322 Grievance).[1] (*Id.* at PageID.233.)

Plaintiff filed the Step I form for the 1553 Grievance on December 21, 2021, alleging that Defendant Brock harassed and threatened him on December 18, 2021, in retaliation for a lawsuit that Plaintiff had filed against Brock. (*Id.* at PageID.245.) The grievance was denied on January 9, 2022. (*Id.* at PageID.246.) Plaintiff appealed to Step II on or about January 21, 2022. The Step II appeal was denied in February 2022. (*Id.* at PageID.244.) Plaintiff then filed a Step III appeal, which was received at Step III on April 7, 2022, and rejected on July 12, 2022. (*Id.* at PageID.233, 243.)

Plaintiff filed the Step I form for the 1322 Grievance on October 13, 2021, claiming that on October 13, 2021, unidentified "mailroom staff" improperly opened his mail to a judge that had been returned to the facility as undeliverable. (*Id.* at PageID.250.) The grievance was denied on October 18, 2021. (*Id.* at PageID.251.) Plaintiff filed a Step II appeal on November 7, 2021. The Step II response upholding the Step I denial was issued on November 22, 2021. (*Id.* at PageID.248–

---

[1] It appears that at Step II the grievance category code for the 1553 Grievance was changed from 17Z to 28E. (ECF No. 62-3 at PageID.244.)

2

49.) Thereafter, Plaintiff filed a Step III appeal, which was denied on January 12, 2022. (*Id.* at PageID.233, 247.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence

is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance

4

"should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

    A.    **The 1553 Grievance**

Defendants contend that the 1553 Grievance did not exhaust any claims against Defendant Brock (or against Defendants Scanlon and Brown) for three reasons. First, they note that Plaintiff filed his complaint in this case before he submitted his Step III appeal for the 1553 Grievance and before the exhaustion process for that was completed. (ECF No. 62 at PageID.216.) Second, they note that the 1553 Grievance was rejected at Step III because Plaintiff failed to include the Step II response with his Step III appeal. (*Id.* (citing ECF No. 62-3 at PageID.243).) Finally, they note that the subject of the 1553 Grievance—Defendant Brock's alleged threats and harassment on December 18, 2021, about a lawsuit Plaintiff had filed against Brock—did not pertain to Brock's alleged interference with Plaintiff's mail, which preceded that date. (*Id.*)

Plaintiff's only response to Defendants' arguments pertains to the rejection. That is, he asserts that "it should be taken into account that Defendant Sgt. Brock continuously interfered with Plaintiff's mail, therefore obviously took out the Step II response knowing the grievance would be rejected at Step III." (ECF No. 63 at PageID.258.) But that argument is based on nothing more than speculation and conjecture—that Brock "obviously" removed the Step II response from

5

Plaintiff's Step III submission. Nonetheless, Plaintiff fails to address Defendants' other arguments. First, it is well established that proper exhaustion requires that the prisoner complete the administrative process before filing his complaint. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (stating that "we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, No. 97-4183, 1998 WL 898870, at *2 (6th Cir. Dec. 17, 1998) (holding that the prisoner's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignore[d] the clear mandate of § 1997e(a)"). As noted above, Plaintiff filed his complaint in this action on February 18, 2022, but his Step III appeal was not received until April 7, 2022, and the decision rejecting the grievance was not made until July 12, 2022.² Thus, Plaintiff's failure to complete the grievance process before filing his complaint renders the 1553 Grievance ineffective to exhaust Plaintiff's claims. Moreover, the 1553 Grievance could not have exhausted Plaintiff's claims in this case because it was limited to the incident of alleged harassment on December 18, 2021, and did not pertain to Defendant Brock's alleged pattern of interfering with Plaintiff's legal mail. *See Powell v. Michigan Dep't of Corrs.*, No. 2:18-cv-221, 2019 WL 10744936, at *3 (W.D. Mich. Dec. 19, 2019) ("Comparing the paragraphs in the complaint which set forth the pending claims to the facts and issues set forth in the grievance, the Court agrees with Defendants that Plaintiff did not exhaust his administrative remedies."). Finally, Plaintiff's failure to respond to these arguments means he has forfeited any response that he might have had. *See, e.g., In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 529 (6th Cir. 2016) (noting that when a litigant fails to raise an argument in the district court, the litigant forfeits the argument);

---

² Applying the mailbox rule, Plaintiff filed his complaint even earlier, on February 15, 2022. (ECF No. 1 at PageID.9.)

6

*Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (holding that failing to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [that] claim").

    **B.**    **The 1322 Grievance**

As for the 1322 Grievance, Defendants concede that it is fully exhausted as to the claim set forth therein. Although the Step I grievance did not specifically name Scanlon and Brown, it did mention "mailroom staff," and Defendants concede that there is at least an issue of act as to whether this reference sufficiently identified Scanlon and Brown. They note, however, that the 1322 Grievance exhausted only the October 13, 2021, incident of mail interference and did not exhaust any other claim. They further note that the grievance did not name Brock, who is not "mailroom staff." (ECF No. 62 at PageID.216–17.)

Citing *Jones v. Bock*, Plaintiff argues that he was not required to name every specific individual involved in the claim, as it would have been unrealistic to require him to ascertain the identities of the employees who were working in the mailroom on October 13, 2021, meeting the deadlines under the grievance policy. (ECF No. 63 at PageID.256–57.) But this argument is not material to Defendants' motion, as they do not contend that Plaintiff's failure to specifically identify Defendants Scanlon and Brown provides a basis to conclude that Plaintiff did not properly exhaust the 1322 Grievance. In fact, Defendants do not even argue that Plaintiff failed to properly exhaust the claim in the 1322 Grievance against Scanlon and Brown.

Plaintiff also suggests that his statement in the grievance that the subject incident was part of "a pattern of interference with [his] mail and documents" indicated that there were ongoing issues with mailroom staff and sufficed to exhaust as to all other incidents in which Scanlon and Brown opened his legal mail outside of his presence and/or interfered with or destroyed his outgoing legal mail. (*Id.* at PageID.257.) This argument lacks merit. In *Siggers v. Campbell*, 652

7

F.3d 681 (6th Cir. 2011), the plaintiff alleged, in part, that a mailroom employee defendant violated his rights by improperly rejecting his incoming mail and improperly intercepting and opening his mail on numerous occasions. Although there were several rejections, the plaintiff filed a grievance only as to one of them. *Id.* at 689. The plaintiff argued, however, that his grievance notified the defendants of a continuing violation. The court rejected the argument, distinguishing the circumstances from those in *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), in which the Eastern District of Michigan held that a prisoner's grievance about not receiving medical treatment for an ongoing, chronic medical condition was timely for all claims that the plaintiff could have filed relating to the ongoing condition, rather than only for those claims that occurred with the seven-day period preceding the grievance. *Siggers*, 652 F.3d at 692 (discussing *Ellis*, 568 F. Supp. 2d at 784–85). In contrast, the court in *Siggers* found that the mail rejection notices did not constitute a continuing harm:

> Siggers was not suffering from one, [sic] continuing harm and government indifference. Rather, the Notices of mail rejection that Siggers identifies are each discrete events, and each Notice involves separate facts and circumstances—and even different policy directives. Furthermore, a grievance on each would have permitted an investigation into the reasons for each rejection, based on the different contents of each rejected piece of mail. Consequently, *Ellis* is not persuasive.

*Id.* at 693. As in *Siggers,* Plaintiff is alleging claims based on discrete events involving different circumstances, each warranting a separate investigation as to why, for example, Plaintiff's alleged legal mail was not opened in his presence or why Defendants interfered with his outgoing legal mail. Accordingly, the 1322 Grievance cannot supply the basis for finding a continuing violation or harm that would excuse Plaintiff's failure to file grievances for prior incidents.

### C.    Unavailability of Grievance Procedure

Plaintiff contends that Defendants thwarted his efforts to file grievances through threats, intimidation, and destruction, theft, or diversion of his mail. (ECF No. 63 at PageID.258.) In *Ross*

8

*v. Blake*, 578 U.S. 632 (2016), the Supreme Court observed that a grievance process is unavailable where, among other things, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. The Court noted that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also id.* at 644 n.3. Similarly, the Sixth Circuit has held that exhaustion may be excused where a prisoner presents concrete and specific facts showing intimidation that would deter a person of ordinary firmness from continuing to use the prison's grievance process. *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577–78 (6th Cir. 2014).

Plaintiff submits the following to support his claim that the grievance procedure was unavailable[3]:

- Unidentified members of the mailroom staff stated to someone, at some time, "nothing Plaintiff processes to the grievance coordinator will be allowed to go through because Sgt. Brock instructed us to give it to him," and Brock told Plaintiff that "you will not be able to get any grievance processed – as long as I am here and as long as the mailroom clerks are employed here – they work for me and I will in fact know if you're sending grievances in or out of the mailbox."
- Once Plaintiff was transferred to another facility, he was able to send mail out without fear of consequences because, unlike Defendants, no one at the new facility has thwarted his ability to file a grievance.
- Defendant Brock removed 13 grievances from the envelopes and destroyed them, telling Plaintiff that if he filed another grievance Brock would "most certainly know about it and continue to make [Plaintiff's] life a living hell and continue to destroy any legal mail" that Plaintiff received or tried to send. Defendant Brock also told Plaintiff that "any mail that does get by [Brock] is only because he allows it to get by him and that the mailroom staff, Karyn Brown and Gayle Scanlon will let him know." Brock told Plaintiff that "he will do whatever he wants to do with [Plaintiff's] grievances and [his] legal mail, especially anything on him, [J]ones, or any MDOC staff there."
- On three separate occasions Brock threatened Plaintiff with the statement that he would "kill [Plaintiff] just like he wanted to kill Smalls." Plaintiff later became aware that Smalls was the plaintiff in *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020).

---

[3] Plaintiff included a verification at the end of his brief pursuant to 28 U.S.C. § 1745. (ECF No. 63 at PageID.267.)

9

- Between April 2021 and May 2022, Brock appeared at Plaintiff's cell and told him that he "better not file anymore grievances or they're gonna find a knife in your sh*t."
- Many of the 32 prior rejections of Plaintiff's grievances were "highly suspect."

(ECF No. 63 at PageID.260–62, 266.)

For the following reasons, I conclude that Plaintiff fails to present sufficient evidence to show that Defendants, including Defendant Brock, rendered the grievance process unavailable to Plaintiff. First, while Plaintiff may contend that he has presented specific and concrete facts establishing that the grievance process was unavailable, his allegations lack specific and material details that would create a factual dispute as to whether the grievance process was unavailable *during the period in question*. For example, Plaintiff recounts alleged statements by mailroom staff indicating that his grievances would not see the light of day, but he fails to identify who made those statements and when they were made. While Defendant Brock obviously made the statements attributed to him, Plaintiff fails to state when they were made. Second, Plaintiff's claim that Brock removed 13 of his grievances from the mail and destroyed them also lacks concrete and specific details. Plaintiff does not state when he wrote these grievances, nor does he provide any information as to what they concerned. *See Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. 2017) (finding the plaintiff's "generalized statements" about the grievance coordinator's refusal to process the plaintiff's grievances were insufficient to create a genuine issue of material fact as to whether the grievance process was available to the plaintiff). Third, whether or not they were highly suspect, the 32 prior rejections have no bearing on the issues in this case. To the extent they are relevant, they do show that Plaintiff's grievances actually made it to the grievance coordinator. Finally, Plaintiff fails to confront the most glaring detail indicating that the process was, in fact, available: he filed and appealed two grievances through all three steps of the grievance process during the time period at issue in this case. Both grievances directly concerned

10

Brock and the members of his alleged enterprise (the mailroom staff) that he assembled to thwart Plaintiff's grievance activity. *See Sango v. Fleury*, Nos. 21-2597/2598/2599, 2022 WL 2163519, at *2 (6th Cir. May 4, 2022) ("Sango's claim that he was unable to utilize the grievance system is belied by his record of grievances.").

## CONCLUSION

For the foregoing reasons, I recommend that the Court **GRANT** Defendants' motion for summary judgment (ECF No. 61) and: (1) dismiss without prejudice Plaintiff's claims against Defendant Brock; and (2) dismiss without prejudice all claims against Defendants Scanlon and Brown except for the claims Plaintiff exhausted in the 1322 Grievance.

Dated: March 16, 2023                              /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).